FILED
2019 Apr-01  PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# (WESTERN DIVISION)

| | | |
|---|---|---|
| **LORA WEAVER,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** _____ |
| **THE LINCOLN NATIONAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Lora Weaver, and in support of her Complaint says as follows:

## THE PARTIES AND THE PLAN

1.     The Plaintiff, ("Ms. Weaver"), is a resident of Alabama, and a disabled individual as defined under a certain long term disability plan.  At relevant times, she was employed by The Mundy Service Corporation ("Mundy"), a national company engaged in providing industrial services across the United States.

2.     Ms. Weaver performed a wide variety of duties in association with her occupation with Mundy, which were physically and cognitively demanding tasks. Ms. Weaver only has education, training and experience with occupations that are physically demanding or require her to remain standing for much of the day.

3.     While employed with Mundy, Ms. Weaver was a participant in the group

short term disability plan for employees of Mundy (hereafter "STD Plan"), and the group long term disability plan for employees of Mundy (hereafter "LTD Plan"), both of which were underwritten and/or insured by Defendant, Lincoln National Life Insurance Company (hereafter "Lincoln"). This LTD Plan is the applicable employee benefits plan which contains the group long term disability ("LTD") policy under which Mundy employees are eligible to receive LTD benefits.

4.     Lincoln is, upon information and belief, a foreign corporation which does business by agent or otherwise throughout the state of Alabama.

5.     All claims decisions regarding Ms. Weaver's STD and LTD benefits and the provision of plan documents were made solely by employees of Lincoln, or by employees of third parties who represented themselves as agents or employees of Lincoln.

6.     Lincoln, upon Plaintiff's information and belief, is the Claims Administrator for both the STD Plan and the LTD Plan, the designated agent of the Plan Administrator, and/or the *de facto* Plan Administrator for the STD Plan and LTD Plan and has been throughout Ms. Weaver's claims process.

7.     The STD Plan defines "Disabled" as "inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation." The STD plan paid benefits during the elimination period.

2

8.      The LTD Plan defines "Disabled" for the elimination period and following 24 months as "unable to perform each of the Main Duties of his or her Own Occupation" "due to an Injury or Sickness."

9.      After LTD benefits are paid for 24 months, "Disabled" is defined as "unable to perform each of the Main Duties of any Gainful Occupation" "due to an Injury or Sickness."

## THE FIDUCIARY DUTIES

10.     Lincoln has fiduciary duties relative to its administration of the plans in question, under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq*.   These duties under 29 U.S.C. §1133 require that an insurance company follow certain minimum standards when the insurance company denies an application for LTD benefits.   ERISA and the Secretary of Labor's regulations under the Act require that a denial or termination of benefits and a review of that afford the claimant an opportunity for 'full and fair review' by the administrator.

11.     Lincoln also makes decisions under a conflict of interest as it pays claims out of its own assets.

12.     As a fiduciary, Lincoln must diligently conduct a claim process that is above marketplace standards for insurers and comply with the requirements of a full and fair review.

3

13.     When Lincoln's claim denial or termination fails to meet those minimum requirements, the claim is deemed exhausted, and Ms. Weaver is entitled to proceed with litigation.  No discretion is afforded to a decision or review that fails to meet those minimum standards, or the denial or termination is due to be found arbitrary and capricious as a matter of law.

14.      Further acting in a conflicted manner by using "scraps" of evidence or cherry picking the evidence is considered arbitrary and capricious conduct.

15.     Some, but not all, of the minimum requirements for Lincoln as a fiduciary mandate:

      a.     Establishment and adherence to a reasonable claim process;

      b.     Consistent decision making with adherence to guidelines and the claim procedures;

      c.     Provision of documents used to administer the plan, and which serve as the basis of making determinations to claimants making a written request;

      d.     Adherence to the plan document promises provision of internal guidelines;

      e.     Provision of the entire claim record inclusive of all facts known whether relied upon or not, within 30 days of a request;

f.      Making timely decisions and only extending the timeframe for decisions for special circumstances beyond the control of the administrator;

g.      Providing clear and understandable reasons for a claim denial or termination;

h.      Notification of decisions set forth, in a manner calculated to be understood by the claimant including --

    (i) The specific reason or reasons for the adverse determination;

    (ii) Reference to the specific plan provisions on which the determination is based;

    (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

i.      A review or appeal decision which is a review of the reasons for the claim termination or denial and not a new rationale;

j.      Fair and honest evaluation of the facts known;

k.      Maintaining communication with and making requests for information from the authorized representative rather than circumventing the representative in order to take advantage of a claimant.

5

## FACTS COMMON TO ALL COUNTS

16.    Lincoln has repeatedly violated all of the above fiduciary duties such that a full and fair review has not been conducted for this LTD claim, to the extent that a pattern and practice of conduct beneath that of a fiduciary is established.   The claims asserted herein are deemed exhausted, and/or any further exhaustion is futile due to the failure of Lincoln to conduct its process as a fiduciary.

17.    In early 2016, Ms. Weaver began to experience lumbar pain, due to L5-S1 herniation with bilateral foraminal encroachment.   The medication Ms. Weaver was taking as prescribed impaired her ability to concentrate and slowed her reaction time, such that it was unsafe for her to continue working in her occupation.   Medications taken contained warnings not to drive or operate machinery.   Her pain was not materially reduced by pain medications, but only diminished.

18.    Ms. Weaver could not maintain the level of cognitive function and stamina necessary to work full-time.   It was not possible for her to perform her job only when she felt well.   The days that Ms. Weaver was unable to perform her job greatly exceeded the sick leave permitted for her occupation and other occupations.

19.    After failing to adequately perform her job duties due to pain, effect of medications and fatigue, Ms. Weaver ceased working for Mundy on or around

April 24, 2016.  She was examined by a company doctor two times after that date and was not found fit to return to work.

20.    Ms. Weaver applied for STD benefits on or around May 11, 2016, and Defendant found Ms. Weaver met the STD Plan definition of "Disabled" and paid STD benefits from May 20, 2016 through the Maximum Benefit Period of 11 weeks which ended in August.

21.    The LTD Plan did not require a separate claim, but was rather a continuation, or "rolling off" of the STD Plan, subject to satisfaction of the LTD Plan's definition of "Disabled."   However, Lincoln surprisingly denied LTD benefits on September 10, 2016, contending that Ms. Weaver did not meet the LTD Plan definition of "Disabled," even though the definition is not distinguishable from Lincoln's STD Plan's definition.   Ms. Weaver's condition had not improved, so she could not understand why her claim was denied, after the same company had approved it.

22.    To further confuse Ms. Weaver, Lincoln cited in its refusal to pay the claim much of the same evidence which it used to find Ms. Weaver disabled under the STD Plan's definition of "Disabled" to deny LTD benefits.   The use of the same evidence to support opposite findings under an identical definition of disability is inconsistent and confusing.   Further, Lincoln did not provide any information as to

what different information was needed to cause the claim to be paid.

23.   The confusion was also frustrating for Ms. Weaver.  For example,

    a.   John A. Hamilton, M.D., the Mundy company doctor, twice examined Ms. Weaver after she left working in 2016 and repeatedly refused to clear her for work.  Initially during the STD benefit period, he examined her on June 27, 2016.  He found Ms. Weaver "not fit for duty", and the STD benefit was paid after this was provided to Lincoln.  Then, he examined her a second time on August 10, 2016, during the LTD benefit period and he still found her "not fit for duty" barring any return to work.  This too was provided to Lincoln, but now it refused to pay the LTD benefit.

    b.   Ms. Weaver was treated by James West, M.D., an orthopedic surgeon. Ms. Weaver was examined by Dr. West several times in 2016 after she ceased work and was never cleared to return to work.  On June 6, 2016, Dr. West completed a Lincoln form which stated that Ms. Weaver's medical condition constituted a Class 5 physical impairment, meaning she was "incapable of minimum (sedentary) activity."  This evidence was used to pay the STD claim, but Lincoln ignored this for the LTD claim.

24.    Because the failure to pay the LTD claim was irrational and inconsistent, and because Ms. Weaver could not understand what was needed to cause the claim to be paid, she hired counsel.  Counsel provided to Lincoln a notarized document verifying counsel met the definition of an authorized representative under the claim procedure regulation.

25.    In order to challenge this refusal, Ms. Weaver made written requests to Lincoln on March 7, 15, 21, and 29, 2017 for the entire claim manual, internal rules or guidelines, and all facts known by Lincoln.  She sought to try to understand the inconsistent decisions by the same company under the same definition of disability.

26.    Lincoln responded falsely contending that it did not have a claim manual or internal guidelines and could only provide the claim file.  It provided only some of the claim file and withheld key documents.

27.    Ms. Weaver challenged Lincoln as to its contention of not having the claim manual, so then it admitted it did have such a document, thus admitting its false assertion, but now claimed it was not required to provide it.

28.    Ms. Weaver again noted that the plan document or policy promises to produce the internal guidelines upon request, but still Lincoln refused to provide this notwithstanding the promise in the plan.  Lincoln also continued to withhold

the rest of the claim record prejudicing Ms. Weaver's efforts to understand the nonsensical claim refusal.

## **THE FIRST APPEAL**

29.    Despite the unfairness in not having all documents and not being able to understand the inconsistent and inexplicable decision, Ms. Weaver nonetheless appealed the Lincoln's adverse decision on March 9, 2017 which was received on that date as well.  A decision was due by April 24, 2017 according to the plan and the law.

30.    Apparently admitting the weakness of its prior inconsistent decision, Lincoln then began to shift the reason for the claim denial to a pre-existing condition which should have been asserted with the claim denial rather than on appeal.  An appeal is a review of the initial decision, not the generation of a new decision and such is unfair to claimants such as Ms. Weaver.  Lincoln would engage in this pattern and practice of sandbagging or asserting new evidence and different rationales for Ms. Weaver repeatedly during the claim process.

31.    In fact, there was no factual basis to assert this new rationale.  Ms. Weaver had worked for the company since 2013.  Ms. Weaver had to repeatedly challenge the unfairness of shifting the reason to deny the claim during an appeal, which unfairly precludes a full and fair review, and shows its intent of allowing its

conflict of interest to drive Lincoln's decisions rather than the truth.

32.    Lincoln never provided a notice to extend the time for its decision and never provided special circumstances beyond its control to justify an extension.  Lincoln purported to deny Ms. Weaver's appeal on May 2, 2017, contending she did not meet the LTD Plan definition of "Disabled" and stating that she can return to her Own Occupation.   Lincoln abandoned its preexisting condition rationale, but asserted new evidence as to why the claim would not be paid which again was unfair and delayed the claim process to the financial detriment of Ms. Weaver.

33.    Lincoln refused to give Ms. Weaver an opportunity to respond to new material developed by Lincoln during the appeal process, namely a paper review of her medical evidence by Michael Chen, M.D., an orthopedic surgeon.   Dr. Chen is widely utilized by the insurance industry to write reports favorable for insurers.

34.    Lincoln's denial of Ms. Weaver's appeal, and subsequent refusal to permit Plaintiff to respond to new material generated during the appeal, created an untenable situation for Ms. Weaver.  Ms. Weaver was not physically able to work and needed surgery and her employer through Dr. Hamilton would not "clear her" to return to work.

35.    With her application for Social Security Disability ("SSDI") pending and no LTD benefits, Ms. Weaver was placed in dire financial straits.  Ms. Weaver was

unable to afford the medical treatment she needed.   She had been trying to obtain LTD benefits since August 2016 when her last STD benefit was paid.   Lincoln would continue its unfairness throughout the claim process to come.

## THE SECOND APPEAL

36.   Ms. Weaver again sought the entire claim record and the claim manual and internal guidelines by letters dated April 26, May 10, June 22, and July 11.   Again, Lincoln only produced some of the claim record, notably excluding a copy of the paper review it had paid Dr. Chen to conduct.   Lincoln refused to produce any other documents.

37.   The LTD Plan mandated a second appeal, in order to avoid a failure to exhaust defense.   Ms. Weaver was hopeful Lincoln might reverse course and the unfairness and lack of fiduciary responsibility might change and so determined to proceed with an appeal while not waiving any rights given the numerous clear breaches of fiduciary duties.

38.   On July 21, 2017 Ms. Weaver again appealed the refusal to pay her LTD benefit.   She challenged some blatant issues.

39.   Lincoln's vocational assessment referenced in the letter refusing Ms. Weaver's appeal falsely stated that the strength requirement for the Dictionary of Occupational Titles (DOT) listing for "Laborer" used was "medium."   It

12

contended that was Ms. Weaver's occupation. The actual strength requirement in the DOT is "heavy." This was the second false assertion by Lincoln.

40. Ms. Weaver noted Lincoln did not provide a copy of the vocational assessment, which again was a breach. Other documents as well were withheld.

41. Claim notes found in the copy of the claim file produced by Lincoln referenced a "Disability Abbreviations Handout". Ms. Weaver specifically asked for this document and Lincoln falsely contended it did not have one, and never produced it. This handout enables claimants to understand cryptic notes and information in the claim record. This was the third false assertion.

42. The initial claim denial letter of September 10, 2016 also referenced medical records from Dr. Hamilton for June 27, 2016 as having been reviewed during the initial claim decision. However, no records from that date were found in the claim record produced.

43. A form bearing Lincoln's name and corporate logo completed by Dr. West on June 6, 2016, was also not found in the claim file produced by Lincoln. Dr. West stated in the form that Plaintiff was "unable to work." Defendant's omission of this form is evidence it attempted to prejudice Plaintiff's appeal by concealing relevant evidence. Ms. Weaver eventually obtained that from Dr. West.

44. Lincoln also conducted a vocational assessment, ignoring the information

13

provided by the Plan Administrator.  Defendant's vocational consultant determined that Plaintiff's Own Occupation was that of "Laborer" – specifically, the DOT listing corresponding to workers who manufacture candles.  Ms. Weaver did not manufacture candles.  Mundy, a national company, provides industrial services not candles.  This again was a breach for failing to conduct and honest and fair assessment and ignoring clear evidence for self-serving conflicted purposes.  The vocational assessment also did not consider the aspects of Ms. Weaver's own occupation that involved cognitive function.   The vocational review was disingenuous.

45.   Ms. Weaver only learned of these improper acts after belated production of the claim record.  She further learned that Lincoln knew when it refused to pay the claim that both Dr. Hamilton and Dr. West, unequivocally opined that Plaintiff was unable to perform her own, or any, occupation, and there were no contrary medical opinions in the claim record when the claim was first denied.

46.   The opinions of both doctors were supported by objective evidence, namely magnetic resonance imaging ("MRI") of Ms. Weaver's lumbar spine showing degenerative changes that supported Ms. Weaver's reported pain and need for surgery.

47.   Despite the opinions of the company doctor, the treating doctor, and

14

objective findings supporting their opinions, Lincoln merely utilized two of its nurse consultants to review the medical evidence.

48.    The first of the two nurse consultants agreed with the opinions of Dr. Hamilton and Dr. West and recommended that LTD benefits be approved.

49.    Inexplicably, Lincoln only utilized a second nurse consultant to conduct a second review, utilizing the same information as was provided to the first nurse consultant.

50.    The second nurse consultant disagreed with her predecessor and the opinions of the two licensed physicians (Dr. Hamilton and Dr. West) and provided an "opinion" which does not qualify as a medical opinion, that supported Defendant's pre-ordained decision to deny the LTD claim.

51.    This illogical and inconsistent utilization of Lincoln's nurse consultants underscored further the need for Lincoln's claim manual, in order to understand why a second nurse review would be required to review the same evidence as a prior nurse who corroborated the credible opinions of licensed physicians (whose opinions themselves were supported by objective evidence – an MRI).

52.    Furthermore, Lincoln's use of a second nurse consultant to disagree with its previous nurse consultant underscores the argument that no deference is due to Lincoln.  Lincoln did not proceed in an unbiased and fair manner when utilizing a

second nurse to contradict the first. Therefore, it is not entitled to deference from this Court. Given the untimely provision of these documents, long after Ms. Weaver's appeal was presented and after Lincoln made its decision, Ms. Weaver was deprived of her choice to proceed directly to litigation.

53.    Lincoln, during the appeal, sought an opinion from Dr. Chen to support the one adverse nurse opinion. Dr. Chen's report which was withheld and then belatedly produced by first class mail received on June 30, 2017 (despite sending requests for information by facsimile), only three weeks before the second appeal was submitted on July 21, 2017.

54.    Dr. Chen's report was nonetheless inconclusive, as he indicated he did not receive all of the relevant records, and thus left himself an "out" to change his opinion later.

55.    Further, he made no attempt to either distinguish or discredit any of the opinions of the treating physicians, who were much better qualified than he by way of experience, and personal examinations. Dr. West continued to provide ongoing treatment as well. The evidence for Ms. Weaver was ignored.

56.    He also failed to reconcile Lincoln's prior decision to pay the short-term disability claim under the same disability definition. That fact was again ignored.

57.    There was also some revising to his report evident. The prior drafts were

16

demanded and should have been produced with the claim record, but Lincoln has refused to do so.

58.     Dr. Chen disingenuously asserted in his report that, since no office visits exist after June 2016, the verified degenerative changes and stenosis/foraminal narrowing confirmed by MRI, should be presumed to be improved i.e. since she has not been able to go to the doctor frequently, she must not need to go.  This is contrary to known medical facts, as skeletal degeneration and spinal narrowing are not conditions that are known to spontaneously improve on their own.  Medical treatment was consistently sought at times when Ms. Weaver had health insurance. Further, Lincoln had unfairly delayed the process with breaches of duty and below market place conduct placing Ms. Weaver in financial difficulty.

59.     Ms. Weaver sought a review from an independent physician, Dr. R.L. Ross, an occupational physician who is certified to conduct independent examinations and has done so for decades both for insurers and individuals.  Dr. Ross found that, based on his review of the medical evidence, there is substantial corroborating medical evidence to warrant Ms. Weaver's limitations and restrictions as stated by her treating physician and the company doctor.  Dr. Ross further opined that Ms. Weaver's medical condition is known to produce the symptoms that prevent her from returning to her own, heavy physical demand occupation.

60.    Finally, Lincoln paid the claim after starving out Ms. Weaver for over a year.   Then it set about to deny the claim again and did so, July 25, 2018, while Ms. Weaver was still recovering from a painful surgical procedure known as a laminectomy.

## THE THIRD APPEAL

61.    After paying benefits about 60 days, Lincoln began its efforts to terminate the claim.   Despite knowing that Ms. Weaver was represented by an authorized representative, and despite having two appeals, dozens of letters, and a notarized document directing all contact with the authorized representative, Lincoln breached fiduciary duties and contacted Ms. Weaver directly on September 28, 2017, a month later on October 26, 2017, and then again on November 7, 2017 in an effort to take advantage of her.

62.    Then in January of 2018, Lincoln demanded completion of a form, noting restrictions and limitations.   This was very similar to the one Dr. West had completed and which Lincoln ignored and withheld, in denying the LTD claim for a year.

63.    Apparently, due to one or more physicians in Alabama being arrested as to the prescribing of pain medications for patients in chronic pain and due to others being investigated, Dr. West changed his office policy and now refused to

complete forms noting restrictions and limitations for his patients.  Likewise, Ms. Weaver's other treating doctor, also refused to fill out forms citing an office policy.

64.    This information on this new policy of treating doctors in the Mobile area refusing to complete forms was provided to Lincoln.  It is also evident in their records which Lincoln obtained.  The doctors would produce their records, but that was all.  Due to the inability to provide the information demanded by Lincoln, Ms. Weaver requested Dr. Ross to conduct an examination independently and to complete the form.

65.    Dr. Ross did so and found her condition to be worsening, and in fact she had evidence of radiculopathy at the time of the exam.  Ms. Weaver underwent surgery for a laminectomy shortly after the examination and before he completed his report.  He also noted Ms. Weaver's records established an intolerance for narcotic pain medications reducing her ability to gain a reprieve from pain.

66.    Nonetheless, Lincoln ignored the evidence and the now completed form it demanded, and terminated the LTD benefit.

67.    Ms. Weaver, by letter dated July 26, again sought the entire claim record, the claim manual, and all guidelines and protocols.  Again, Lincoln only produced part of the claim record.

68.    Documents were withheld again.  For example, claim notes referred to a

19

transferable skills analysis report (TSA) was performed by Ms. Rowe.  However, she did this before she had the paper review from a doctor hired to perform the review.  Clearly Mr. Rowe knew the result of the doctor's report suggesting there was another report or conversation.  None of this was produced.  Further, the payment made to the doctor for the short amount of time he invested in this paper review was not provided.

69.   Further, there appears to be a "scrubbing" of Lincoln's doctor's report placed in the claim record.   Claim notes reflect the doctor, Dr. Circincione, removed his statement that Ms. Weaver be reevaluated in 4-6 weeks given she was still recovering from surgery.  The conversation directing the removal of this information was withheld as well as the prior report.

70.   The appeal of Ms. Weaver noted the claim was terminated by Lincoln wrongfully confusing the requirements of sedentary work.  Lincoln's vocational consultant felt Ms. Weaver could work a full-time sedentary occupation because the newly obtained paper review of Dr. Circincione, thought she could sit 2 hours and 39 minutes per work day, once she had fully recovered.

71.   Sedentary work requires sitting *most* of the work day.  The DOT defines "occasional" as up to one-third of the workday.  That is 2.66 hours in an 8-hour day or about 2 hours and 39 minutes per day.  *Most* of the day would be well in

excess of 4 hours per day at least, and more likely in excess of *frequent* which is defined as 5 hours and 18 minutes per day.

72. Further, Dr. Circincione found the combined totals that Ms. Weaver could tolerate sitting and standing together for 5 hours and 18 minutes per day. Assuming he had some legitimate basis to make that determination, which is not conceded, that is not a full-time 8-hour work day.

73. The TSA was further defective as it assumed abilities that Ms. Weaver did not possess. Ms. Weaver has only engaged in hard physical work her adult years. She is not qualified or trained at working a desk job. She has no education, training or experience in computer keyboarding and secretarial type abilities. The only evidence in the claim record produced to date shows Ms. Weaver's skills lay entirely in light to heavy physical demand work.

74. Not leaving anything unrefuted, Ms. Weaver also presented a vocational report which debunked any remaining shred of credibility in the TSA. It had made assumptions and findings that Ms. Weaver was at maximum medical improvement which was not true. The TSA was useless.

75. Further, no effort was made by Dr. Circincione to contact Dr. Ross, the only physician opining on restrictions based on a physical examination. Dr. Circincione failed to cite to any credible evidence to refute the examination of

Dr. Ross.   He merely *believed* Ms. Weaver would improve after her laminectomy.

76.   Meanwhile, Ms. Weaver's condition declined, contrary to Dr. Circincione's subjective belief that she would improve.   Only weeks after the claim termination, Ms. Weaver's pain persisted and on August 14, she required a coccydynia injection.

77.   At Ms. Weaver's request, Dr. Ross again examined her in August of 2018 and he found she had positive results when conducting a straight leg test.   This test is a standard examination procedure.   It indicated one or more of the nerve roots leading to the sciatic nerve may be compressed or irritated.

78.   An MRI on November 16, 2018 revealed that a disc protrusion *was* contacting the S-1 nerve which explained the pain Ms. Weaver was experiencing, and confirmed Dr. Ross's exam findings.

79.   An EMG/NCV on December 5, 2018 conducted by Dr. Nichols, reflected that a fusion surgery was needed, further confirming the restrictions and medical issues that were obvious to everyone except Lincoln and those it hired to opine.

80.   On January 23, 2019, Ms. Weaver presented her third appeal setting out this evidence.

81.   While the appeal was in Lincoln's possession, the Social Security

Administration held a long-awaited hearing from Ms. Weaver and found her disabled from performing any gainful occupation. The decision was presented to Lincoln.

82.    Lincoln failed to make a decision within 45 days as mandated by the plan and the law. Instead Lincoln tried to develop new reasons during the appeal to deny the claim.

83.    Ms. Weaver had enough of the unfairness, dishonest and disingenuous conduct. Lincoln was not capable of conducting an honest and fair review. Given the pattern and practice of fiduciary duty breaches and the refusal to follow the most basic of minimum requirements for a full and fair review, Ms. Weaver advised Lincoln that the claim was deemed exhausted and she proceed to file the instant litigation.

84.    The claim process has been fully exhausted by law and/or it is demonstrably futile to proceed any further with the claim process.

## COUNT I

85.    Ms. Weaver incorporates by reference all prior paragraphs of this Complaint.

86.    This Count is brought to enforce Ms. Weaver's rights under the LTD plan in question as permitted under 29 U.S.C.§1132(a)(1)(b) and it further seeks to

recover benefits, interest and such equitable relief as may be recoverable under this code provision and under 29 U.S.C. §1132(g). It further requests specific performance of Lincoln's refusal to produce its claims manual and claim process abbreviations. To the extent the Court contends it is not permissible to require this in Count I it is alleged in the alternative in Count II.

87.   Lincoln wrongfully, and in violation of its obligations under ERISA, breached its agreement to pay LTD benefits to Ms. Weaver. It also withheld its internal guidelines and claims manuals which it contractually agreed to produce upon request.

88.   Lincoln has not performed a full and fair review of Ms. Weaver's claim. Its decision is not due deference.

89.   Ms. Weaver has been denied her LTD benefit and has been placed into financial distress as a result of having her benefit denied. She has suffered harm in not receiving a stable benefit by having to fight for over a year to first receive benefits only to see it terminated again 11 months later. She has borrowed from friends and family and caused them to incur expenses on her behalf. Interest at 1.5% per month is due to be added to each month the benefit has not been paid.

   **WHEREFORE**, Ms. Weaver demands judgment against the Defendant as follows:

24

a)    For the sum of all past due long term disability benefits;

b)    For an order for Lincoln to re-open Plaintiff's claim so that she may pursue future and/or unpaid long term disability benefits yet to be paid under the plan;

c)    For interest on all past due benefits at 1.5% per month or such rate as is equitable;

d)    For an award of attorney's fees (including fees relating to many breaches of fiduciary duties before suit was filed);

e)    For this Court to enter an order requiring Defendant to produce its claims manual and list of claim process abbreviations;

f)    For a *de novo* review due to the lack of a full and fair review and various violations of the law relevant to the claim procedure.

## COUNT II

90.    Ms. Weaver incorporates by reference all previous paragraphs of this Complaint.

91.    This Count is brought pursuant to 29 U.S.C. 1132(a)(3) and is alleged in the alternative to require specific performance under the plan or policy in question which is attached as **Exhibit A**.

92.    The plan or policy promises to provide internal guidelines upon request of a claimant in connection with a claim denial or termination.

93    Lincoln has refused to produce this in bad faith and without any reasonable excuse.

94.    Ms. Weaver requests that the Court order specific performance of the policy or plan by producing this document and also the abbreviations Lincoln uses to assist in understanding the claim record.

95.    Lincoln never provided any procedures to exhaust these breaches of fiduciary duties and other breaches of fiduciary duties.

96.    All attorney's fees incurred regarding these breaches and not part of the benefit claim therefore are compensable as they are not incurred toward an administrative or claim process.

**WHEREFORE,** Ms. Weaver requests that this Court enter an Order providing equitable and appropriate relief including:

a)    Reimbursement of all expenses, costs and attorney's fees incurred by Ms. Weaver investigating these matters before suit was filed;

b)    For an order from this Court requiring production to Ms. Weaver of all internal guidelines, claim manuals and other similar documents, and for the abbreviations guide Lincoln utilizes.

c.)    For such other relief as may be appropriate.

## COUNT III

97.    Ms. Weaver incorporates by reference all previous paragraphs of this Complaint.

98.    This Count is brought pursuant to 29 U.S.C. § 1132(c).

99.    Lincoln must also comply with requests for plan documents and instruments used to operate the plan, which were required by law to be furnished under 29 U.S.C. § 1132(c) and under the plan document. Lincoln had an obligation as "any administrator" or as an entity assuming the duties of "any administrator," to comply with requests for information, which was required by law to be furnished under 29 U.S.C. § 1132(c). Under 29 U.S.C. § 1029, the Secretary of Labor prescribes what documents must be furnished. Under 29 U.S.C. § 1133, the Secretary of Labor has legislative authority to prescribe regulations. The Secretary of Labor has determined that plan documents and instruments, such as the claim manual, and internal guidelines are documents due to be provided as instruments used to operate the LTD Plan.

100.    Under 29 C.F.R. § 2560.503-1, Ms. Weaver, as a participant, is entitled to have reasonable access to all information relevant to a claim for benefits. The

Lincoln has breached the duty to provide all plan documents, including the claim manual.

101. Ms. Weaver requested in writing all plan documents that govern her claim process and a complete copy of various plan documents inclusive of internal guidelines which the plan required Lincoln to produce.

102. Upon information and belief, Mundy, the employer does not have these documents, and in fact only Lincoln promised to produce them. It has refused repeatedly.

103. All of the aforementioned information was required by law to be furnished under 29 U.S.C. § 1132(c) and under the plan document.

104. The breaches of these duties have caused and contributed to the circumstances resulting in this litigation and have prejudiced Ms. Weaver in causing her frustration and mental anguish by the lack of understandable decisions.

105. Given the equitable and fiduciary duties contractually agreed upon by Lincoln it is equitable for it to be contractually and legally responsible for failure to produce plan documents solely in its possession and which the plan requires it to produce. Equity requires that the penalty apply to it as well.

**WHEREFORE,** Ms. Weaver demands judgment against Defendant Lincoln jointly and severally as follows:

    a.      For an award of penalties of $110.00 per day as the maximum allowed by law for each day the plan documents and/or instruments sought were not received in response to *each* written request;

    b.      For an award of attorney's fees; and

    c.      For costs of this action and other proper equitable relief.

            Respectfully Submitted,

David P. Martin
(ASB-3500-M68D)

**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
david@erisacase.com

**Plaintiff's Address:**

Lora Weaver
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

29

**Defendant's Address:**

The Lincoln National Life Insurance Company
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

**To be served regarding the statutory penalty claim:**

Mr. R. Alexander Acosta
Secretary of Labor
200 Constitution Avenue N.W.
Washington, DC 20210

Mr. Steven Mnuchin
Secretary of Treasury
1500 Pennsylvania Avenue N.W.
Washington, DC 20220